# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 1977 | **DATE** | 4/13/2012 |
| **CASE TITLE** | Trustees of the Automobile Mechanics Local No. 701 Union and Industry Pension Fund vs. Krumpholz, et al. | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion to strike Krumpholtz, Inc. d/b/a Crossroads Chevorlet-Buick, Inc's affirmative defenses [#22] and for judgment on the pleadings [#29] is granted. The parties may prepare a proposed judgment order, agreed to in form, for the liability of Crossroads. Plaintiff's motion to strike Schoenthaler Partners' affirmative defenses [#29] is granted. Plaintiff's motion for judgment on the pleadings as to Schoenthaler Partners [#29] is converted to a motion for summary judgment. Defendant to file a supplemental response and statement of material facts by May 4, 2012; plaintiff to reply by May 18, 2012. Briefs and statements of fact are limited to 8 pages each (16 pages total per party). See statement section of this order for details.

■[ For further details see text below.]                                                               Notices mailed by Judicial staff.

## STATEMENT

This is an action to recover payments past due on withdrawal liability allegedly owed to the plaintiff Trustees of the Automobile Mechanics Local No. 701 Union and Industry Pension Fund ("the Fund") by Bob Krumpholz, Inc. and Schoenthaler Partners ("Partnership"). The claim arises under the Employment Retirement Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq*., as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1301–1461. It is undisputed that Bob Krumpholz, Inc. did business as Crossroads Chevrolet-Buick, Inc. and maintained its principal place of business in West Chicago, Illinois. (The court will refer to Bob Krumpholz, Inc. and Crossroads Chevrolet-Buick, Inc. as "Crossroads"). Crossroads is wholly owned by Robert W. and Edward P. Schoenthaler, who are also the general partners of Partnership. Partnership is a general partnership that owns a beneficial interest in the real property upon which Crossroads maintained its principal place of business. The Fund alleges that Crossroads and Partnership and any related entities are a "single employer" under the MPPAA and are therefore jointly and severally liable for the scheduled withdrawal liability payments which the Fund assessed against Crossroads. Partnership has asserted eleven affirmative defenses and Crossroads has asserted six. The Fund has moved to strike all of them. Because Crossroads failed to oppose the Fund's motion to strike, the court grants the motion as unopposed. (*See* Dkt. #22.)

### I.    Motion to Strike

Rule 12 of the Federal Rules of Civil Procedure requires a defendant to plead any affirmative matter that will defeat a plaintiff's claim. To determine whether an affirmative defense is sufficient under Federal Rule of Civil Procedure 12(f), the court applies a three part test. *See Bobbitt* v. *Victorian House, Inc.,* 532 F. Supp. 734, 737 (N.D. Ill. 1982). First, the matter must be an appropriate affirmative defense.[1]   *Id.*  Second,

## STATEMENT

the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9. *Id.* Third, the affirmative defense must meet the Rule 12(b)(6) standard. *Id.* Therefore, in considering a motion to strike, the court must consider all well-pleaded allegations in the defenses to be true, draw all reasonable inferences in favor of the defendant, and only grant the motion to strike if defendant is unable to plead sufficient facts to suggest a right to relief that is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 1937, 1949–50, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 557, 562–63, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Reimer* v. *Chase Bank USA, N.A.*, 274 F.R.D. 637, 639 (N.D. Ill. 2011) ("Although *Twombly* and *Iqbal* dealt with the detail required in the allegations of a complaint, courts in this and many other districts have extended *Twombly's* heightened pleading standard to affirmative defenses.") (collecting cases); *Bank of Am., N.A.* v. *Shelbourne Dev. Group, Inc.*, 732 F. Supp. 2d 809, 815 (N.D. Ill. 2010) ("[B]ecause affirmative defenses are subject to the pleading requirements of the Federal Rules of Civil Procedure, they must set forth a short and plain statement of all the material elements of the defense asserted; bare legal conclusions are not sufficient.") (internal quotation marks and citation omitted); *High Sierra Sport Co.* v. *Travelers Club Luggage, Inc.*, No. 10 C 3419, 2010 WL 5174390, at *2 (N.D. Ill. Dec. 15, 2010) ("Just as the Court gives Plaintiff the benefit of any reasonable inferences in construing the complaint, so too does Defendant receive the benefit of reasonable inferences in construing the answer.").

Applying these principles, the court rules on the listed defenses as follows:

1. An Arbitration Is Pending

This defense is stricken. Defendants aver that an arbitration has been initiated for resolution of the dispute. As the Fund correctly points out, the MPPAA establishes a "pay now, dispute later" system. *See* 29 U.S.C. § 1399(c)(2). As succinctly summarized in *Central States, Southeast and Southwest Areas Pension Fund* v. *Bell Transit Company,* 22 F.3d 706, 707 (7th Cir. 1994), "the exercise of the employer's right to review and arbitrate does not suspend the employer's obligation to pay in accordance with the schedule of payments assessed by the plan." *Id.* (citing *Jaspan* v. *Certified Indus., Inc.,* 645 F. Supp. 998, 1004 (E.D.N.Y. 1985)). Section 4001(b)(1) of ERISA provides that all "trades or businesses (whether or not incorporated) which are under common control" with the withdrawing employer are liable as a single employer. 29 U.S.C. § 1301(b)(1). "The employer is still liable for payment during the review and appeal period, and litigation instituted by an employer to contest the liability will not suspend the dates set for payment in the Act." *Id.* (internal citations and quotation marks omitted). Partnership does not allege that it has paid according to the schedule. Indeed, the Answer admits that only one payment was made in the amount of $10,398.00 pursuant to a notice to make 80 such payments quarterly. (Answer ¶¶ 17, 21.) As such, until the arbitrator decides that Partnership is not a single employer, this defense lacks any basis for defeating the Fund's claim.

2. The Arbitration Is In Discovery and Remains Pending

For the reasons stated in No. 1, this defense is stricken.

3-8. Partnership Is Not A Single Employer

Defense number 3 is stricken. It is merely a denial of the allegations of Paragraph 19 of the complaint. It is not a proper affirmative defense because it does not assume the truth of the allegations of the complaint. The same is true of defenses 4 through 8, all of which address whether Partnership is a single employer with Crossroads. These defenses are also stricken.

**STATEMENT**

9. Imposition of Withdrawal Liability Violates Due Process, The Takings Clause, And The Commerce Clause

   A. Due Process. The Seventh Circuit in *Peick* v. *Pension Benefit Guaranty Corporation*, 724 F.2d 1247, 1268 (7th Cir. 1983), held that "the MPPAA rationally furthers legitimate Congressional concerns and [therefore] the withdrawal liability provisions of the MPPAA do not contravene the due process clause of the Constitution." *Peick* has not been cast in doubt by a more recent decision of the Seventh Circuit or the Supreme Court. As a result, this defense is foreclosed. The defense is stricken.

   B. Takings Clause. *Peick* also decided that the Takings Clause is not applicable to analysis of the constitutionality of withdrawal liability under the MPPAA where, as here, the party "identif[ies] no interests other than their purely contract-based 'right' to avoid liability for further contributions to the pension plans in which they participate." 724 F.2d at 1276; *see id.* ("Because this contractual right in no way constitutes a type of distinct and identifiable 'property', we need not even reach the question of whether there was a 'taking' in this case."). Defendants have pleaded no facts that would suggest that the Takings Clause is implicated in this case. The defense is stricken.

   C. Commerce Clause. Partnership asserts that Congress has no authority under the Commerce Clause to impose withdrawal liability on Partnership as a single employer. They rely on cases now pending before the Supreme Court reviewing whether the so-called individual mandate under the Patient Protection and Affordable Care Act, Pub. L. No. 111–148, 124 Stat. 119 (2010), amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111–152, 124 Stat. 1029 (2010), exceeds Congress's power under the Commerce Clause. *See*, *e.g.*, *Florida* v. *U.S. Dept. of Health & Human Servs. Fl.*, 648 F.3d 1235 (11th Cir. 2011), cert. granted 132 S. Ct. 604 (Nov. 14, 2011). The cases test whether a provision, 26 U.S.C. § 5000A, in the Patient Protection and Affordable Care Act, Pub. L. No. 111–148 § 1501, that requires individuals to purchase health insurance or pay a penalty exceeds Congress's power under the Commerce Clause. Partnership argues that ERISA §§ 4219(c)(2) and 4221(d), through the control group provisions, impose a mandate on Partnership to contribute to a private pension plan which has no contractual or fiduciary relationship with either Partnership or the individual partners. *See* 29 U.S.C. § 1399(c)(2); *id.* § 1401(d).

   The MPPAA protects employees in multiemployer pension plans by requiring employers who withdraw from such plans to pay their share of "unfunded vested benefits." 29 U.S.C. § 1381(b)(1); *Chicago Truck Drivers* v. *El Paso Co.*, 525 F.3d 591, 595 (7th Cir. 2008). ERISA treats all trades or businesses under common control as a single employer. 29 U.S.C. § 1301(b)(1). Governing regulations are to be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section of 26 U.S.C. § 414(c). *Id.* Although anything is possible, it is highly unlikely that the Supreme Court's decision on the Affordable Care Act, even if it strikes down the individual mandate, will point to the conclusion that Congress is unable to impose withdrawal liability on a group of trades or businesses under common control. To hold otherwise would create the perverse incentive to use separate business organizations to defeat the very purpose of ERISA, which is to ensure that employee benefit plans are funded as promised under collective bargaining agreements. This defense is therefore stricken.

10. Accord and Satisfaction, Set-Off, Waiver, Release, Estoppel, Etc.

   These defenses are stricken. Defendants merely recite a laundry list of well-established affirmative defenses. They plead no facts in support of any of them. As such, they do not plead consistently with Rules

8 and 9.

11. Reservation of Rights to Assert Additional Defenses

This is not a defense and is, therefore, stricken. If defendants wish to assert any additional defenses, they may present them on a motion for leave to amend.

**II. Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *N. Ind. Gun & Outdoor Shows, Inc.* v. *City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). "Where the plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." *Hous. Auth. Risk Retention Grp., Inc.* v. *Chi. Hous. Auth.*, 378 F.3d 596, 600 (N.D. Ill. 2003) (internal quotation marks and citation omitted); *see Heyes* v. *City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012); *Moss* v. *Martin*, 473 F.3d 694, 698 (7th Cir. 2007); *see generally* 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1368 (3d ed.). In such a motion, "the court considers the pleadings alone, which consist of the complaint, the answer, and any written instruments attached as exhibits." *Hous. Auth. Risk Retention Grp., Inc.*, 378 F.3d at 600. "[I]f the court does not exclude matters outside the pleadings from its consideration, it should convert the Rule 12(c) motion into a Rule 56 motion for summary judgment." *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 453 n.5; *see Church* v. *Gen. Motors Corp.*, 74 F.3d 795, 798 (7th Cir. 1996).

An employer that withdraws from a multi-employer plan incurs withdrawal liability under the MPPAA equal to its proportionate share of the plan's unfunded vested benefits. *See* 29 U.S.C. §§ 1381, 1391. A "complete withdrawal" occurs when an employer permanently ceases to have an obligation to contribute under the plan, or permanently ceases all covered operations under the plan. *Id.* § 1383(a). To collect withdrawal liability, a plan must first determine the amount owed by a withdrawing employer, *id.* § 1382, and then send the employer a notice and demand for payment. *Id.* § 1399(b)(1). The employer may ask the plan to review its assessment, *id.* § 1399(b)(2), and may contest the plan's assessment of its liability through arbitration, *id.* § 1401(a)(1). Under section 4219, "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." *Id.* § 1399(c)(2).

Under the MPPAA, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." *Id.* § 1401(a)(1); *see Robbins* v. *Lady Baltimore Foods, Inc.*, 868 F.2d 258, 261 (7th Cir. 1989) ("Courts interpreting § 1401(a)(1) have been consistent and unequivocal in concluding that this provision mandates that any dispute over withdrawal liability must be arbitrated."); *Central States, Se. & Sw. Areas Health and Welfare Fund* v. *Cullum Cos., Inc.*, 973 F.2d 1333, 1335 (7th Cir. 1992) ("Arbitration of any dispute concerning a plan's determination of withdrawal liability is mandatory."). Thus, if an employer requests arbitration to settle a withdraw dispute, "an employer is almost always required to make payments while it . . . pursues arbitration." *Nat'l Shopmen Pension Fund* v. *Disa Indus., Inc.*, 653 F.3d 573, 576 (7th Cir. 2011) (citing § 1401(a)(1)).

Crossroads filed an answer to the Fund's complaint denying liability, but subsequently abandoned its defenses by failing to respond to the Fund's motion to strike its affirmative defenses and motion for judgment

**STATEMENT**

on the pleadings. (Dkt. #20, #22, #29.) Indeed, Partnership, which is represented by the same counsel as Crossroads, states in its response brief that Crossroads "does not contest liability" in this case. (Partnership Resp. at 5.) The Fund's motion for judgment on the pleadings as to Crossroads is therefore granted for all past due interim withdraw liability payments. The Fund is also entitled to recover interest on the missed payments, liquidated damages, and reasonable attorneys' fees and costs under 29 U.S.C. § 1132(g)(2). *See Central States, Se. & Sw. Areas Pension Fund* v. *Murphy Bros., Inc.*, 772 F. Supp. 2d 918, 922 (N.D. Ill. 2011). "These additional payments are 'mandatory add-ons in (successful) suits to enforce' a delinquent employer's duty to contribute." *Id.* (quoting *Central States, Se. & Sw. Pension Fund* v. *Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992).[2]

As to Partnership, section 4001(b)(1) of ERISA provides that all "trades or businesses (whether or not incorporated) which are under common control" with the withdrawing employer are liable as a single employer. 29 U.S.C. § 1301(b)(1); *Central States, Se. & Sw. Pension Fund* v. *Personnel, Inc.*, 974 F.2d 789, 792 (7th Cir. 1992); *see* 26 C.F.R. § 1.414(c)-2. Under the pay now, dispute later scheme established by the MPPAA, "an employer must make interim payments until liability is finally determined" unless "the employer can show both that the pension fund lacks a colorable claim and that the employer will suffer severe financial hardship if compelled to make interim payments. *Central States, Se. & Sw. Pension Fund* v. *Bomar Nat'l, Inc.*, 253 F.3d 1011, 1015 & 1016 (7th Cir. 2001).

The court has determined that Crossroads is liable for interim withdrawal liability payments and the Fund has asserted that Partnership is a trade or business under common control with Crossroads. (Compl. ¶ 19.) Although Partnership denies that it jointly and severally liable for Crossroads' withdraw liability, *see* Answer ¶ 20, the Seventh Circuit has indicated that an entity's single employer status is an issue that may be resolved by an arbitrator. *See Slotky*, 956 F.2d at 1373 ("[W]e may assume that if such an arbitration is commenced, the arbitrator can decide the issue of controlled group membership.").

The Fund attached to its Rule 12(c) motion the affidavits of Robert W. and Edward P. Schoenthaler, which purport to show that Partnership is a single employer with Crossroads. (Plf.'s Mot. for J. Ex. A.) Partnership has asked for leave to supplement its response should the court consider the Schoenthaler affidavits, thereby converting the Fund's Rule 12(c) motion into one for summary judgment under Rule 56. Given the limited state of the record, the court believes that supplemental briefing would be beneficial. The court will consider the attached affidavits and convert the Fund's Rule 12(c) motion to one for summary judgment. Partnership is given leave to supplement its response and the Fund is given leave to reply. Partnership's brief should focus on whether the Fund lacks a colorable claim against Partnership and whether Partnership will suffer a severe financial hardship if compelled to make interim payments. Partnership must file its supplemental response and a statement of material facts by May 4, 2012; the Fund must reply by May 18, 2012. The parties' briefs and statements of material fact are limited to 8 pages each (16 pages total per party).

---

1. Under the first prong, the question arises, what is a proper affirmative defense? Commentators have suggested that a proper affirmative defense is one which "raises a matter outside the scope of plaintiff's *prima facie* case and is thus a matter not raised by a simple denial," *Bobbitt*, 532 F. Supp. at 736 (citing 2A Moore's Federal Practice ¶ 8.27(3) at 8-250, 8-254), or "generally admits the matters in a complaint but suggests some other reason why there is no right of recovery." *Id.* (citing 5 Charles Alan Wright et al., *Federal Practice and Procedure* § 1270 at 292).

2. Crossroads' "interest liability accrues from the due date of each missed installment payment, and any liability for liquidated damages (either double interest or up to 20% of unpaid contributions, whichever is greater) should relate only to missed installment payments as well." *Chicago Truck Drivers, Helpers & Warehouse Union (Ind.) Pension Fund* v. *Cent. Motor Freight, Inc.*, 125 F.3d 526, 535 (7th Cir. 1997).